Final case on the calendar, Lynn v. Bailey and Gallagher. Good morning, your honors. John Lynn here is pro se. My wife here, Gerilyn, is also a pro se, but she has a health condition with a heart and would rather not say anything, so I'd like to take her time. Certainly. Thank you, sir. First of all, I appreciate the privilege of being here. This is probably one of the first times we can actually be heard. As far as being pro se, we are not here because we want to save money or something. We are here because we have a hardship inflicted on us by the defendant, so we have no choice but to proceed pro se. We still have conducted ourselves professionally, respectfully, and complied with all the laws as if we were attorneys. We are here on the appeal because we have been deprived of our due process and access to the courts. We just want to be heard in accordance with all the laws. As pro se litigants, we have been treated pretty badly with contempt and disrespect, and we were never actually heard. We just want access to the courts. The defendants have conspired with one another to deprive us of due process. One outrageous threat that I believe sums it all up by one of the defendant attorneys, Mr. Pastore, who is an officer in the court, is we are a smart bunch. You will never win. We know all the judges. We will litigate you to death. These threats made us more sad than angry. In fact, one of the defendants, Mr. Gilhouse, with 27, 30 years' experience, also had made other threats. Mr. Gilhouse was terminated from the law office that he worked at for 27 years. We believe that, for lack of a better phrase, he was the fall guy for the bank CEO for telling them to do all these malicious things to us and deprive us of our civil rights. Mr. Blank, could you identify what all these malicious things are? Because I'm having trouble understanding where there is an underlying fraud here. It sounds, as I read the complaint, as if the bank lent you a lot of money, which in the circumstances of an unfortunate economic turndown, you were not able to repay. Then they sought foreclosure, and they elected to pursue that rather than to pursue a negotiated settlement. That is correct, except, Your Honor, it was not an economical issue. I know it's not the issue of this court, but I was a very reputable builder. I had a lot of experience, and I began to build houses in a high-end community where local officials lived. My black customers were victims of discrimination and bias, which I made complaints, and I was retaliated against. I went to Trusco Bank and told them that I'm having issues, and you're alone, maybe in jeopardy, due to these issues. And you have a responsibility to at least help me. And their horrible comment was, that's your problem, you do what you have to do to get us paid. Meaning- That may be nasty, but what is unlawful about insisting on being repaid? There's nothing, nothing, sir, I didn't get to that yet, and I agree, they should be paid. Yes, sir, I'll get to it quick. So, I'd be interested in the answer to Judge Lynch's question, how come they did that was- Well, what they did is, first, I know they're allowed to do it, they foreclosed on a note instead of the mortgage. My property was worth more than that I owed. They wanted to foreclose on a note because they wanted to go after me personally, because the bank CEO didn't like me for some reasons, because I said that they were conducting themselves like street thugs. I probably shouldn't have said that, but they did. So in any event, instead of foreclosing on a mortgage, they foreclosed on a note. Their own appraisal showed that the property was worth more. And to me, that's just not a responsible thing for a bank to do. They could have foreclosed on a mortgage and come after me for deficiency, but- Excuse me, but you understand that you're charging them with conducting a racketeering enterprise- Yes. Which involves multiple criminal acts of fraud. And now you're telling me that they did something that was an irresponsible business practice? No, I'm going to get to that, sir. Okay, so that's- The bank, and I always said, the bank has a right to come after me. They don't have to be nice about it, but they have to go by the rules. That's why I'm here, they didn't go by the rules. So I had no choice but to go into bankruptcy court and declare bankruptcy for protection. They deprived me of that protection because they still pursued me after my bankruptcy discharge. What did they do? They filed a fraudulent lawsuit upstate in Albany that during bankruptcy, I fraudulently conveyed half of an office building to my wife to beat them out of money, which is totally untrue. With that, they were able to obtain a six year restraining order on all our income, which basically destroyed us. The problem is, they based their loan on the fact that we were both 50% owners, and they also wanted to refinance our building and had all our documents and documentation showing that. So they deliberately lied to this judge in order to choke us with this restraining order, which it did. So over the course of time, we had to litigate that. And that was also a bankruptcy discharge violation. And we finally won on that, but after our house was being foreclosed on, after we lost our business, after we almost lost our house and numerous other things. I'm going to bring this up because the defendants did. Could you say a bit more about what you understand Mr. Gallagher to have done? Well, I believe Mr. Gilhouse, the defendant, he was the one doing all these unlawful things to us, and eventually he was terminated after 27 years. I want to go to court and get discovery and have due process so I can show why he was fired. There's a lot of collateral damage to what was done to us, including our son's deprivation of his rights by. When they deprived us of all of our income, our son had a back injury, and we wanted to send him to Cleveland Clinic and pay out of pocket for his injury. I think the question is about Mr. Gallagher. Yeah, Mr. Gallagher. I'm sorry, sir, I thought you were talking about Mr. Gilhouse. Mr. Gallagher, I'm talking about- As far as Mr. Gallagher is concerned, the reason why we named him is because he could be a gentleman and he could be a nice person, but we don't know if he was conspiring with them to cause harm to us or if he just made an honest mistake. So I never got to that point. In the complaint, it's not at all clear what he is supposed to have done. Well, he rubber stamped something that was incorrect. And had he not done that, we would have had due process to show that the bank wasn't following proper procedures. And he may have made a mistake. And actually, I kind of believe that he did because I know people who know him and they said he's a gentleman. But we also, based on our personal experience in the trust go, maybe they were conspiring with him to cause damage onto us. In order to sue somebody successfully, you have to have some basis at the time you file the complaint. It's not only a question of whether Mr. Gallagher did something wrong, because he's been dismissed on grounds of judicial immunity. And so he's not really, and I didn't see anything in your brief that said that shouldn't have been done. But you're saying he's part of a racketeering enterprise, and that he's the only person outside the bank and its agents who is supposedly part of this enterprise. So I'm trying to figure out what makes you think that's an enterprise. Without due process and discovery, we don't know if he did that or he just made an honest mistake. But the mistake that he made was significant to us. And we don't know if it was an honest mistake or Trust will call him and say, get this guy and make their lives miserable. But in any event, I'm going to go back to what I was saying. I do apologize for mixing them up. And as far as the judicial immunity is concerned, we don't believe that Mr. Gallagher was acting in his capacity as a decision maker. He was acting in a capacity of, is these papers correct or not correct? So I don't think it was a decision on that. It was just to objectively verify that certain papers were being filed, and that's the problem that we have with that. As far as getting back to the restraining order, I was getting on to this, and I'm not telling this story because I want sympathy, but it is a major thing. When you deprive people of all their income, and a person, a family has a health condition, and they're deprived of that, it can have a serious impact. For example, our son had a back injury. We wanted to send him to Cleveland Clinic for therapy. Because we were deprived of our income by the restraining order, that was a sham. He didn't go for eight months. At the end of eight months, he did go, and it was found that he had stage four cancer. In those eight months, this is what bothers me the most. The doctor said that had he come earlier, when we wanted to, he probably wouldn't have had stage four cancer. That really, really bothers us, and I'm not blaming them on the cancer. I am blaming him that when you file a sham lawsuit against someone and it has collateral damage, I want to be heard on that. I want to show my evidence. I know we have enough evidence to show this, among other things. And I know I only have a certain amount of time, and I do have a lot of notes. But I do believe that we fit all the criteria and all the elements to proceed with the Rico case. That it is an enterprise. There was people acting with one another, knowingly and deliberately breaking the law in order to cause damage to us. Most of them are officers of the court, attorneys who lied. They know they lied by getting this six year restraining order, because they had the papers, and they based their paper, their loan, on the fact that we both have always owned Promo Commons. In fact, our tax returns, our accountant, our lawyers, all filed affidavits that this was the fact. So really the premise is based on the fact that they lied to court, to the court, to the judge for a six year restraining order that really killed us. When you take people's income away for six years, it causes major destruction. I'm not going to go on and on about all the health and all the issues, but I believe that anybody would be able to understand that. We just want our day in court. They have done everything outrageous to deprive us from going to court. In fact, when we went to state courts, the merits of our case was so strong that we, as pro se litigants, pierced the corporate veil of the bank's CEO, which is a major thing, meaning there's a lot of merits to it. The judge in that case instructed the defendants not to file a summary judgment. He ignored it and filed it anyway, and then the judge decides on it. There's something really wrong with that when they don't follow the rules, and the judge allows them to not follow the rules, and we are the ones who are never being heard. And I think they're just trying, and they have, worn us down, and that's why we're here today. We have irrevocable damage, and this bank, together with their lawyers, have conspired with one another to cause harm to us. In fact, a totally impartial federal agency, the OCC, had filed a 27-page complaint and filed a $5 million fine against Trusco for all their wrongdoings for other items. I'm just showing you what their demeanor is. So- Thank you. You have a concluding- Yes, I do. Few paragraphs. I do. Thank you for your time, sir. In conclusion, I am very certain that we have established all the key ingredients to proceed with the Rico case in the federal court. And we have all the documentations to pursue that, and yet we've been deprived of it over and over again. I can go on for hours, and in a more concise way, if we're able to be heard. They never argue the facts, they only make up things to force us to have to defend them. A lot of them are lies. I always say, they don't have to be nice, but they have to go by the law. They haven't in their offices of the court. I think their comments say it all. We'll litigate you to death, and they have. Thank you. Thank you. Thank you. We'll hear from your adversary. May it please the court, my name is Jonathan Nelson. I represent all the appellees except for Christopher Gallagher. Your honors, as set forth at length in my brief, the facts of this instant matter do not come close to setting forth sufficient facts to make out a Rico cause of action. This is why appellants will never be able to make out a Rico enterprise, a pattern of racketeering or resulting injury. I think I've addressed those points fairly fulsome in my brief, and so unless there are questions with regard to that, I think my limited time is better served addressing how we got here. Because what the facts of this matter do sufficiently demonstrate is this is the second out of three attempts of appellants to go after Trusco Bank and the related defendants for the same set of factual groupings. The third set is a recent state court action that was recently dismissed and is not before this court. So in addition to not making out the Rico action, what appears to be reoccurring through appellants' papers is the misunderstanding. And I get it, I understand, it's pro se. But it's a misunderstanding that a dismissal for failure to state a cause of action or a dismissal for a res judicata is somehow not getting your day in court. And it's a difficult concept, and I understand. But re-litigating the same set of factual groupings over and over again is just not proper, and that's precisely what's led us here today. You see, the factual groupings, the facts that are alleged in this action could have been raised in Trusco's action on the notes in 2008. They are identical to and were raised in defense of Trusco's fraudulent conveyance action. And that was the action that appellant had mentioned. Are identical, and this is important, to those raised in appellants in a state court action brought in 2014. Indeed, a lot of the allegations in the amended complaints are actually just copied and pasted from that complaint into this amended complaint. And so this type of re-litigating, this court has seen it before. I think a case that I've cited that's particularly on point is Saud versus Bank of New York, where this court upheld a dismissal of a RICO complaint based upon race judicata grounds. And so, as this court can readily ascertain from the prior actions, again, in particular the 2014 state court action, they present the same facts, the same transaction, the same connected series of transactions are at issue, the same evidence needed to support both matters are presented, the same facts essential to both matters were indeed raised and litigated. And then, just to conclude, the re-litigating of the same factual groupings is just simply not permissible. And the lower court's decision should be affirmed. Thank you. May it please the court, my name is Rita Costa-Biltobin, and I represent, I am the counsel for appellee Christopher Gallagher. The district court dismissed all claims against Mr. Gallagher on June 6th, 2017, and that order should be upheld for three reasons. Mr. Gallagher is properly treated as a judicial officer, as a referee, and is entitled to absolute immunity. Neither of the two exceptions to the general rule apply. He was acting within his judicial capacity, and he was acting clearly within his jurisdiction. Thirdly, because he was acting in his judicial capacity, he is equally immune, as the district court found, from any lawsuit in his individual capacity. The facts supporting his assertion of immunity are undisputed, and were undisputed here by the appellants. On September 27, 2013, the Rockland Supreme Court appointed him as referee in the Trusco foreclosure action. Acting as referee on November 25th, 2013, Mr. Gallagher filed the oath and report of amount due that the appellants referred to in their underlying complaint and in the appeal. After the foreclosure sale, which took place on March 27, 2015, Mr. Gallagher signed and filed legal documents reporting that sale. At the time in Rockland County- Ms. Tobin, could you just tell me, just for my own edification. Sure. What brings about the appointment of a referee in a foreclosure action? Is that routine? That is routine, and he is appointed by the judge in order to perform certain actions, including the computation of the amount due the lender, and the administration of the sale. And it's given to the judge, ultimately? It's given to the judge. Ultimately, the judge signs the foreclosure action. And I think the case to look at is Green v. Cadillac, with a K, mortgage brokers, and that's 936 Federal Supplement 108. That's a SDNY case. And in that case, the referee was found to have immunity when he had performed essentially the same actions. I'm more curious about how a referee- Oh, I'm sorry. As opposed to it just being handled by the judge. Right. Well, the court will delegate certain tasks to the referee. Does that happen in every foreclosure? I am not aware whether that happens in every foreclosure. I know it happens often, and I have actually a number of cases cited in which it did happen, and the referee was later found to have immunity. We, and neither in the district court nor in this court, have the appellant cited any legal authority to support their contentions that Mr. Gallagher, because Mr. Gallagher, they claim committed an act of non-feasance and not validating certain elements in the affidavit, that therefore his immunity is lost. In fact, that is not the case, and the cases are very clear on this, that not only did he act within his judicial capacity, but absolute immunity applies, even if a referee's actions are based in malice, and that's a Supreme Court case, an old Supreme Court case. Well, Pearson, P-I-E-E-R-S-O-N-V-R-A, and that's 386 U.S. 547. And in fact, for the referee to lose his immunity based on exceeding his jurisdiction, he must have known that he was acting in clear absence of jurisdiction, and that's a Second Circuit case. Tucker v. Outwater, 118 F930, that's from 1997. So, concluding, as a duly appointed referee, Mr. Gallagher took actions in keeping with his appointed capacity, regardless of whether he's accused of non-feasance or malfeasance, he's being sued based on the actions that he took as a referee. And therefore, regardless of any, we believe, utterly unfounded criticisms or suspicions that the appellants may have about his actions, he's afforded absolute immunity, both as a referee and an individual, and the district court's decision should be affirmed. Thank you. Thank you all for your arguments. The court will reserve decision. The clerk will adjourn court.